# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 18, 2013

Lyle W. Cayce
Clerk

No. 12-40487
Summary Calendar

DOREATHA WALKER,

Plaintiff - Appellant

v.

HITCHCOCK INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No: 3:11-CV-219

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Doreatha Walker appeals the district court's order denying her motion for partial summary judgment and granting defendant Hitchcock Independent School District's motion for summary judgment on her Title VII retaliation and race discrimination claims, her 42 U.S.C. § 1983 claim that she was denied due process, and her Texas Whistleblowers Act ("TWA") claim. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40487

## FACTS AND PROCEEDINGS

Walker was employed as the Director of Kids First Head Start for Hitchcock under a one-year probationary contract for the 2008-09 school year. As Director, it was her job to facilitate collegial relationships between staff and communication between the Superintendent, staff, parents, and the Head Start Policy Council.[1]

In February 2009, Walker filed a complaint with the county health department. She reported that there was mold and poor air quality in the Head Start Building where she worked, which she thought was a violation of law. She believed that the mold had made her ill and had sought medical treatment shortly before she filed her complaint. She requested leave under the Family Medical Leave Act ("FMLA"), but the Superintendent informed her in early March that she did not qualify for FMLA leave because she had been employed by Hitchcock for less than one year. She also filed a Texas Workers' Compensation Act claim establishing her inability to work and the conditions under which she could return to work, which was processed by her doctor. At the same time these events were unfolding, the Superintendent recommended to the district's Board of Trustees that Walker's contract be renewed for the following school year.

On March 20, Hitchcock received a return-to-work slip from Walker's doctor, indicating that Walker could return to work on March 23, but could not return to the Head Start Building. The Superintendent did not initially notice this restriction, and notified Walker that Hitchcock would allow her to return to work. After realizing his error, the Superintendent sent Walker a letter on March 24 explaining that the district would not permit her to return to work

---

[1] The Policy Council is composed of parents and makes employment recommendations about whether to terminate or renew the Director's contract to the district's Board of Trustees, which is the ultimate decision maker.

until she could resume her duties in the Head Start Building. Walker, however, reported for work on March 26. The Superintendent was away, but his assistant in charge told Walker that she needed to leave campus until she could provide Hitchcock with a medical release without the restriction. Walker refused to leave, and the police were called to escort her off campus.

On April 6, Walker met with the Superintendent to discuss her employment status. Walker told the Superintendent during the meeting that she felt she had been treated unfairly on account of her race when she was denied FMLA leave and when she was escorted off campus by police. On May 1, Walker and the Superintendent had a second meeting in which they discussed her conduct and several complaints co-workers had made against her. On May 3, Walker filed a report with the Texas Education Agency alleging that Hitchcock filed fraudulent claims for reimbursement expenses for students who had not used district-provided transportation. On May 4, the Superintendent placed her on administrative leave with pay, citing her insubordination and inability to facilitate collegial relationships with Head Start staff and parents. Walker countered that it was her staff that was insubordinate. On May 6, she filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").

The Policy Council voted in August to recommend to the Board that Walker's contract not be renewed. The Superintendent made the same suggestion to the Board, which followed these recommendations.[2] It informed Walker that her contract would not be renewed, gave the bases for its decision, and told her of her right to appeal to the Texas Education Agency. Walker did appeal her proposed termination and was heard by a hearing examiner. The

[2] Walker amended her EEOC claim to include a claim for retaliation for her reports to the health department and education agency after learning of these recommendations.

No. 12-40487

examiner upheld the Board's decision and the Texas Commissioner adopted the examiner's recommendation.[3]

While her EEOC charge was pending, Walker brought a TWA lawsuit in state court. A jury found that her reports to the county health department concerning the mold and air quality in the Head Start building and her reports to the state education agency alleging that Hitchcock filed fraudulent transportation reimbursement requests were not made in good faith. It also found that these reports were not a cause of her suspension or the Superintendent's recommendation to the Board not to renew her contract.

Walker filed a separate suit claiming Title VII retaliation and discrimination, denial of due process, and violation of the TWA in state court.[4] Hitchcock removed this case to federal court on December 9, 2010. On December 2, 2011, Walker filed a partial motion for summary judgment on her due process claim. Hitchcock responded on December 15 by filing a cross-motion for summary judgment on all claims. On March 21, 2012, the district court granted Hitchcock's motion in full and denied Walker's motion.

## DISCUSSION

Walker claims that she established genuine issues of material fact with respect to each of her claims, so her claims should have survived summary judgment. She also alleges that the district court made various procedural errors that necessitate reversal. Hitchcock disputes both contentions.

*1. Standard of review*

---

[3] Hitchcock continued to pay Walker her salary until the Board accepted the hearing examiner's decision.

[4] It is unclear from the record why Walker's state court cases were separate, particularly as they were both allege violations of the TWA stemming from the same set of events and were both originally filed in Galveston County, Texas. Nevertheless, they are separate causes. The case tried to a jury was No. 09-CV-1439, while this case, before it was removed, was No. 10-CV-1583 in state court.

No. 12-40487

We "review a district court's grant of summary judgment *de novo*, applying the same standard as did the district court." *Stults v. Conoco, Inc.*, 76 F.3d 651, 654 (5th Cir. 1996). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004). "We view facts in the light most favorable to the non-movant and draw all reasonable inferences in its favor." *Jackson v. Widnall*, 99 F.3d 710, 713 (5th Cir. 1996). But we "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003). Finally, "[a]lthough we liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with the standards of Rule 28." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (citation omitted).[5]

*2. Preliminary issues*

First, Walker argues in her appeal that 98 of her exhibits were omitted from the district court record and the district court erred in not considering these exhibits when it ruled on the parties' summary judgment motions. But the district court found that Walker did not file a complete list of all the exhibits listed as she now claims. It also found that many of the 98 exhibits were duplicates of other filed exhibits. Walker provides no argument or evidence to the court from which we could conclude that these findings are clearly erroneous or that the district court's denial of her subsequent motion to supplement the record with the exhibits was an abuse of discretion. *See United States v. Campbell*, 73 F.3d 44, 46-47 (5th Cir. 1996). Moreover, Walker fails to explain how the information in these exhibits establishes a genuine issue of fact material

---

[5] Walker provides scant argument for her many claims of error by the district court. We nevertheless consider her claims as best we can without the benefit of further elaboration.

5

No. 12-40487

to her claims. Therefore, the alleged omission, if in fact erroneous, was harmless error. *Id.* at 47.

Second, Walker claims that the district court erred when it did not give her notice of the submission date for filing her response to Hitchcock's motion for summary judgment. The district court did not err, because it is not required to give such notice. Federal Rule of Civil Procedure 56 "merely requires the court to give the non-movant an adequate opportunity to respond prior to a ruling. . . . [T]he adverse party must have at least ten days to respond to the motion for summary judgment." *Widnall*, 99 F.3d at 713 (internal quotation marks omitted). Hitchcock filed its motion for summary judgment on December 15, 2011. The court did not rule on it until March 21, 2012, long after ten days had elapsed. Furthermore, Walker did file a response to Hitchcock's motion on December 29, 2011, so even if the district court had erred, the error would be harmless.

Third, Walker alleges that the district court disposed of her case on summary judgment to clear its docket. She provides no evidence or argument to support this claim, so it is waived. *See Cuellar*, 59 F.3d at 525 ("[A pro se appellant's] failure to articulate any appellate argument therefore deprived the [defendants] of their opportunity to address fully all the issues and prejudiced their ability to prepare and present arguments to this Court. Consequently, we will not excuse his noncompliance with Rule 28.").

Fourth, Walker claims that the district court did not provide reasons when it denied her partial motion for summary judgment on her § 1983 claim. However, in granting Hitchcock's motion on the same claim, the district court necessarily set forth its reasons for denying Walker's motion, because it explained how Hitchcock's position succeeded and Walker's failed as a matter of law.

*3. Title VII retaliation claim*

6

No. 12-40487

To establish a prima facie case that Hitchcock retaliated against her in violation of Title VII, Walker must show that "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). Walker claims that Hitchcock fired her because she complained to the county health department about the mold and poor air quality in the Head Start Building and reported Hitchcock's allegedly fraudulent transportation reports to the state education agency.

We assume for the sake of argument that Walker has established a prima facie case of retaliation. In response, Hitchcock must provide a legitimate, non-retaliatory reason for the discharge. *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). If Hitchcock does, the burden is placed on Walker to "offer evidence from which the jury may infer that retaliation, in whole or in part, motivated the adverse employment action." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004). Hitchcock sent Walker a letter that contained eighteen performance-related reasons warranting her termination. Performance deficiencies are a legitimate, non-retaliatory reason for discharge. *See Davis v. W. Cmty. Hosp.*, 786 F.2d 677, 683 (5th Cir. 1986). Walker points to the fact that she was fired in relative close temporal proximity to making her complaints and asserts that Hitchcock's decision to fire her was based on a retaliatory motive. That, standing alone, is insufficient to sustain Walker's burden to respond to Hitchcock's non-retaliatory justifications for the discharge. *See Swanson,* 110 F.3d at 1188. The district court correctly granted Hitchcock's motion for summary judgment on Walker's retaliation claim.

*4. Title VII discrimination claim*

To establish a prima facie case of racial discrimination in employment, Walker must show that (1) she is a member of a protected class, (2) she was

7

qualified for her position, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because she was a member of the protected class than were other similarly situated employees who were not members of the protected class. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). In the district court and on appeal, Walker proffers no evidence, either direct or circumstantial, *see Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) ("A plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence."), to prove the fourth element of her claim other than her subjective belief that she was treated differently than white co-workers who were similarly situated. She simply states that white employees were treated differently and points out her own statements in the record that Hitchcock discriminated against her. Under this court's precedent, such a subjective belief of Walker's is not sufficient to establish a prima facie case of discrimination. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) ("Byers urges this Court to rely on his subjective belief that Brown discriminated against him because he was white. This Court will not do so.") Because Walker failed to make a prima facie showing, the district court did not err by granting summary judgment for Hitchcock on this discrimination claim.

*5. Section 1983 claim*

Procedural due process places constraints on governmental decisions that deprive individuals of property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Under well-established federal law, the constitutional minimums for due process require that the final decision maker must hear and consider the employee's story before deciding whether to discharge the employee." *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 465 (5th Cir. 2003).

No. 12-40487

Walker claims that she was denied due process because she was not allowed to attend the Policy Council meeting where the council decided whether to recommend that her contract be renewed. Furthermore, she contends that the Superintendent's separate recommendation, which he made to the Board of Trustees before the Policy Council made its recommendation, also violated her Fourteenth Amendment due process rights. Although it is debatable whether Walker's probationary contract gave her a property interest in continued employment, we need not decide this issue. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 578 (1972) (holding that where "the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year" and "supported absolutely no possible claim of entitlement to re-employment. . . . he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment"). Even assuming that she had a property interest that Hitchcock could not deprive her of without due process, Walker received all the process she was due. The Board of Trustees notified her of its proposed decision not to renew her contract and of her right to appeal. She did appeal and was afforded the opportunity to present her case before a hearing examiner of the Texas Education Agency. During the appeals process, Hitchcock continued to pay her salary. Therefore, the final decision maker heard her story before upholding the Board's decision to terminate her contract. The Due Process Clause of the Fourteenth Amendment requires nothing more, and the district court did not err in granting Hitchcock's motion for summary judgment on this claim.

*6. TWA claim*

Walker claims that the district court erred in granting Hitchcock's motion for summary judgment on her TWA claim that she was retaliated against after she complained about mold and poor air quality in the Head Start Building to

9

the county health agency and reported Hitchock's purportedly fraudulent reimbursement requests to the state education agency.  The district court based its grant of summary judgment on two grounds.  First, it concluded that the claim was barred by the Eleventh Amendment because, although the TWA waives state sovereign immunity for claims brought under the Act in state court, it does not waive sovereign immunity for claims filed in federal court.  Second, it determined that Walker's required showing for her TWA claim was collaterally estopped by the jury's specific findings in her state court case.

The district court was mistaken in concluding that the Eleventh Amendment deprived it of jurisdiction over Walker's TWA claim.  Walker originally filed this case in Texas state court.  Therefore, by removing the case to federal court, Hitchcock waived its immunity from suit in federal court.  *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) (holding that a state's act of removing a suit from state to federal court waives its Eleventh Amendment immunity).

Nonetheless, in exercising its jurisdiction over Walker's TWA claim, the district court properly granted summary judgment to Hitchcock.  As the district court noted, a successful TWA claim requires Walker to prove that she made her reports in good faith.  *See* TEX.GOV'T CODE ANN. § 554.002(a) ("A state or local governmental entity may not suspend or terminate the employment of . . . a public employee who *in good faith* reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." (emphasis added)).  Because a Texas jury had found that Walker did not file her complaints in good faith, she was collaterally estopped from arguing in this case that she had filed them in good faith.[6]  *Allen v.*

---

[6] To the extent that Walker's TWA claim in district court was identical to the claim she asserted in state court, it is also barred by res judicata.

10

*McCurry*, 449 U.S. 90, 94 (1980).  Therefore, she could not prove her case and summary judgment was appropriate.

## CONCLUSION

For the reasons given above, the district court's order granting summary judgment for Hitchcock is AFFIRMED.